FILED

JAN 1 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No.

DOROTHY DIER
Incapacitated
Summit Park 1502 Frederick Rd. Catonsville, MD 21228
JERRY L. DIER, her son and next friend
11448 Rowley Rd. Clarksville, MD 21029
(202)276-8716

        Plaintiffs

    vs.

PHYLLIS MADACHY, DIRECTOR
OFFICE OF AGING,
HOWARD COUNTY, MARYLAND
Court Appointed Guardian of the Person
DOROTHY DIER held incapacitated
6751 Gateway Drive, Columbia, MD 21046  and
JUDGE DENNIS SWEENEY,
State of Maryland, Howard County Circuit Court,
Howard County, Maryland
8360 Court Avenue, Ellicott City, MD 21043

        Defendants

Petition for a Writ of
Habeas Corpus for a
Person found Incapacitated

In State Custody

CASE NUMBER  1:07CV00106

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 01/17/2007

**PETITION PURSUANT TO 28 U.S.C. SECT. 2254, FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY-PLAINTIFF'S SEEKS HABEAS CORPUS RELIEF, RELEASE FROM STATE CUSTODY, UNDER THE UNITED STATES CONSTITUION FOR VIOLATION OF PLAINTIFF'S SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS AND DENIAL OF PLAINTIFF'S CIVIL RIGHTS UNDER 42 U.S.C. 1983 MATERIALLY AND SUBSTANTIALLY DEPRIVING PLAINTIFF OF SIGNIFICANT LIFE, LIBERTY AND PROPERTY RIGHTS AND INTERESTS UNDER THE COLOR OF STATE LAW THROUGH A SERIES OF STATE GUARDIAN ACTIONS WHERE COURT APPOINTED COUNSEL AND THE TRIAL COURT ACTED IN A SEEMINGLY JOINT EFFORT CONTRARY TO LAW WHEN FAIRNESS AND JUSTICE WERE TURNED ASIDE, EQUAL PROTECTION UNDER THE LAW WAS NOT TO BE FOUND, AND THE COLOR OF LAW BECAME A TOOL TO DISREGARD PLAINTIFF'S RIGHTS AND IMPINGE ON PLAINTIFF'S HUMAN DIGNITY AT A TIME WHEN MEANINGFUL ASSISTANCE OF COURT APPOINTED COUNSEL AND AN IMPARTIAL COURT WERE ABSENT FROM THE PROCEEDINGS**

Comes now the Petitioner DOROTHY DIER, by and through her Son and next friend, Jerry L. Dier, Pro se, pursuant to 28 U.S.C. Sect. 2254-2255 and 28 U.S.C. Sect. 1331 who submit the following Petition for Writ of Habeas Corpus in behalf of the Petitioner, DOROTHY DIER, in state custody subject to a Court order that placed her in SAID custody, care and control of the State of Maryland, Office of Aging, Howard County under the authority and supervision of the State of Maryland, Howard County Circuit Court, Judge Dennis M. Sweeney acting under the color of state law, depriving DOROTHY DIER, 42 U.S.C. Sect. 1983, of her rights and privileges under the United States Constitution. The PLAINTIFFS(DOROTHY DIER and her son and next best friend, Jerry L. Dier) request this Court to issue an Order, Writ of Habeas Corpus, setting aside the appointment of a Guardian of the Person finding by the State of Maryland, Howard County Circuit Court due to the denial by that State Court under the Color of Law to afford DOROTHY DIER the protections guaranteed by the United States Constitution, amongst others, Due Process of Law, Equal Protection under Law, Right to a Jury Trial, Right to be Present and Confront Witnesses, Right to Counsel in a meaningful fashion and Right to a Hearing before a Fair and Impartial Court. To do other than set DOROTHY DIER free would be to condemn her without remedy to the unconscionable wrongful conduct which is clearly beyond the pale of English Common Law and American Jurisprudence which have evolved in parallel to the respect accorded for the dignity of men and women, a hallmark of western civilization as witnessed by the importance that rights of individual citizen are accorded in the United States Constitution against the weight and majesty of the governmental institutions. In support thereof, PLAINTIFFS shows unto the Court as follows in a manner and fashion which are

2

consistent with the model form for use and application for habeas corpus relief pursuant to 28 U.S.C. Sect. 2254.

## PRELIMINARY STATEMENT

DOROTHY DIER'S was placed in custody pursuant to the orders of the Honorable Judge Dennis M. Sweeney in violation of her rights under the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States under the color of state law in violation of in the following respects amongst others which are set forth in this Petition for Writ of Habeas Corpus.

In a guardian of the person action court appointed counsel, Anthony Doyle, for DOROTHY DIER **Without Consultation**, WAIVED her rights under the United States Constitution to be Present, and to have a Jury trial, as well as Affirmatively represented to Judge Sweeney that she wanted a guardian of the person appointed and that she either affirmed or denied certain factual representations in the petition for guardianship; when this matter was brought to the attention of Judge Sweeney by Jerry L. Dier, acting as an Interested Person, Judge Sweeney praised court appointed for his exemplary representation and conducted himself contrary to law.

        a- Part of said exemplary representation included but was not limited to Judge Sweeney's placing on the record, directed to court appointed counsel during a status hearing, "Are you awake," and during the trial, "Are you all right," and only thereafter did Mr. Doyle only minimally participate in the trial. In addition, during a hearing concerning both the legal underpinnings of the proceedings before the court and the care, safety and well being of DOROTHY DIER at a facility, Summit Park, where DOROTHY DIER was moved from Washington, D.C. to Baltimore County, outside the Jurisdiction of Judge Sweeney, a judge of the State of Maryland, Howard County Circuit Court,

3

PURSUANT TO COURT ORDER, without notice and/or family permission,. Anthony Doyle's response as court appointed counsel response was to request of the court permission, which was granted "to exit by the back door," as he had a meeting to attend.

b- Said hearing continued in his absence.

c- Judge Sweeney acknowledged that his sister lived three houses from Summit Park and by 'mere' chance said facility was also only blocks away from the office of court appointed counsel.

d- Judge Sweeney commented that he thought he had been inside said facility(extra-judicial knowledge) which he later denied at another hearing and in a Memorandum and Order.

e- Judge Sweeney commented during said hearing concerning Summit Park, that you can not expect Mercedes Benz treatment on a Chevrolet budget.

f- Judge Sweeney appointed the named Anthony Doyle as court appointed counsel in a subsequent proceeding, guardian of property regarding DOROTHY DIER.

g- In said subsequent matter, guardian of property, brought by Summit Park, a want- to- be creditor, contrary to Maryland law, Judge Sweeney Denied a recusal motion brought by Interested Person Jerry L. Dier, in behalf of his mother, DOROTHY DIER Founding his decision on the above noted Conduct of court appointed counsel, Anthony Doyle, which Judge Sweeney contrary to both fact and law found exemplary..

Furthermore, Judge Sweeney Denied that he had earlier stated on the record as noted above that he had been inside Summit Park prior to DOROTHY DIER'S court ordered movement to said facility and he did not need the transcript read back to him-**extra-judicial** knowledge of a material fact in dispute such as whether or not Summit Park was an appropriate facility to provide care and treatment for DOROTHY DIER requires that the trial court recuse itself under Maryland Rules concerning Judicial Ethics and Conduct.

## APPOINTMENT PROCESS

At the initial court hearing on October 14, 2005, court appointed counsel, Anthony Doyle after carefully crafted representations and questions by Interested Person, was found to have falsified under his signature in his Answer to Petition(Appendix 2) purportedly filed in open, but there

was no record of that event in the transcript, but a copy
given to Jerry L. Dier, where upon reading it became all to
apparent and Mr. Dier reported to Judge Sweeney that the
representations contained therein were ALL MADE
WITHOUT CONSULTATION of Mr. Doyle's court
appointed client, the mother of Jerry L. Dier, DOROTHY
DIER. Said affirmative representations went so far as to
waive rights guaranteed and protected under the United
States Constitution. Judge Sweeney praised Mr. Doyle's
conduct as exemplary throughout the proceedings and felt
so secure in his position within the Maryland Court system
as to appoint Mr. Doyle in a further case, guardian of
property as regards DOROTHY DIER.
Judge Sweeney appointed the State of Maryland, Office of
Aging, Howard County as guardian of the person for
DOROTHY DIER which he specifically recognized would
be contrary to her wishes. Said Office of Aging who
directed the movement through its designated agent,
Ophelia Ross, of DOROTHY DIER from Washington,
D.C. to Baltimore County, Summit Park, acknowledged
that it did so without first hand knowledge as regards said
facility. Moreover, the Office of Aging through its
representative, Ophelia Ross had testified at an earlier
hearing before Judge Sweeney casting grave doubt on her
credibility that while DOROTHY DIER was hospitalized
in Maryland, that said representative had gone to said
hospital to attain a further physician certificate
representing that she had a court order to that effect, which
was contrary to fact. Said conduct was ignored by Judge
Sweeney whose statement at a hearing only a short time
earlier expressing concern over the adequacy of one of the
two required filed physician's certificates apparently gave
impetus to said improper conduct on the part of the Office
of Aging's representative, and now the very same person
exercising supervisory authority under the Court as regards
DOROTHY DIER'S medical care and treatment.

Judge Sweeney appointed Thomas M. Meachum as
guardian of the property for DOROTHY DIER. At the
hearing when the Court found that a guardian of property
was needed, simultaneously both Judge Sweeney and the
legal representative for Summit Park, Ms. Shaffer, both
suggested that the Reese & Carney, a Howard County law
firm would be appropriate as a guardian of the property. In
addition, Ms. Shaffer said that an attorney in said firm just
happened to be in another courtroom in the courthouse at

that very moment. Judge Sweeney did not act at that very
moment, but soon thereafter, he appointed another member
of Reese & Carney, attorney Thomas M. Meachum as
guardian of property for DOROTHY DIER.
Mr. Meachum's areas of practice as noted in his
curriculum vitae are government related with no mention
of family law and/or estate law. Not surprisingly, Mr.
Meachum, in the last election, 2006, was the campaign
treasurer for two of the five sitting members of the Court,
for the Judicial Circuit for Howard County, who were up
for election and ran together. The buzz issue in that
campaign was the influence of law firms in the election of
judicial officers. .

### MINDSET OF JUDGE SWEENEY

Judge Sweeney's mindset was made abundantly clear
when he stated in reponse to Jerry L. Dier, as Interested
Person, motion's attacking the legitimacy of the
proceedings, at the February 2, 2006, status hearing

**Even assuming the statutory jurisdiction was not able to
be sustained the court BELIEVES it's INHERENT
POWERS as guardian of person would fill any gap in
that determination(extra special emphasis added)**

Furthermore, at that same February 2, 2006, status hearing, when specifically discussing

the issue of the purported waiver of a Jury trial when court appointed counsel, Anthony

Doyle waived said right protected by both the United States Constitution, Sixth

Amendment and Maryland Rule 10-205(b)(1) Without Consultation Judge Sweeney

stated

    . . . .And why should we drag everybody, including
     your poor mother through a jury trial proceeding in
     if there's – it's clear, and it's clear to me beyond
     any co-eval, that's your mom is – is well within
     the range of people that seriously need a guardian?

6

Thus, five weeks before trial, March 7, 2006, a trial by the court, Judge Sweeney had accepted Mr. Doyle's waiver of DOROTHY DIER'S right to Jury trial Without Consultation and furthermore, had announced his closed mindset that DOROTHY DIER needed a guardian well in advance of a trial, in which he had declared him himself to be the sole fact finder and determining person as regards the application of the law in a trial before him, rendering said trial a "mere" formality.

Apparently the notion of Judge Sweeney's belief system was grounded in the "inherent powers" of a Court, sweeping away both English Common Law and American jurisprudence which has evolved to do justice over the centuries at the cost of precious human life in the face of enemies who have placed our constitutional system of government under attack and/or at risk. In all due respect to his office, Judge Dennis M. Sweeney, State of Maryland, Howard County Circuit Court, has not been endowed with god-like powers and authority, he is accountable to the Rule of Law. Judge Sweeney's conduct is to be measured not by the color of robe but by the content of his actions.

The linkage between Judge Dennis M. Sweeney, Anthony Doyle, and the State of Maryland, Howard County Departments of Social Services and Aging is abundantly clear and said linkage extended to Summit Park and Thomas M. Meachum as regards a concerted effort to deprive DOROTHY DIER of her guaranteed rights under the United States Constitution of life, liberty and property. Said linkage is undeniable and said conduct is indefensible.

More specifically:

7

1. DOROTHY DIER was found by the State of Maryland, Howard County Circuit Court

Case No. 13-C-0563324, after a trial by the court, March 7, 2006, to be disabled and

incapacitated with no other reasonable alternative available, other then the appointment

of a guardian of the person. The trial court further specifically held that her son, Jerry L.

Dier was the most caring and concerned son he had ever seen and seasoned counsel for

the petitioner, Howard County Department of Social Services immediately so

**STIPULATED** to the same. In addition, the court stated that if this was choice for

Dorothy Dier to make, she most definitely would choose her son, Jerry L. Dier, not some

stranger. However, in pertinent part, the Judge Dennis M. Sweeney ordered

> WHEREAS, this Court has found by clear and convincing evidence
> That Dorothy Dier lacks sufficient understanding or capacity to make
> Or communicate responsible decisions concerning her person because
> Of a disability as defined in the Md. Code Ann., Est. & Trusts 13-705,
> The nature and disability being Dementia; and

> WHEREAS, the Court finds that it is in Dorothy Dier's best interests
> To have a Guardian of the Person appointed; and

> WHEREAS, the disabled person needs a Guardian of the Person and
> There is no less restrictive form of intervention available which is
> Is consistent with the person's welfare and safety, and it is therefore

> ORDERED, THIS 7TH Day of March 2006, by the Circuit Court for
> Howard County, that Phyllis Madachy, Director of the Howard County
> Office on Aging, or her successor or designee, 6751 Gateway Drive,
> Columbia, MD 21046 be and is hereby appointed Guardian of the
> Person of Dorothy Dier with all of the rights enumerated in Md. Code
> Ann., Estates & Trusts 13-708; and it is further

> ORDERED, that the Guardian of the Person may consent to medical,
> dental, or other professional care, medication, including psychotropic
> medication, counseling, treatment, services, or admission to a nursing
> home for the disabled person (Appendix 1, March 7, 2006 Court order).

At trial, on March 7, 2006, in response to Jerry L. Dier's attempt to introduce a tape

recording of mother speaking to him in a most caring and loving fashion as only a mother

can for her child, the following exchange took place between Jerry L. Dier, Judge Dennis

M. Sweeney and counsel for the petitioner, Ms. Heydon

>     MR. DIER: --It's love, care and affection, Your Honor.
>
>     THE COURT: --And your mother loves you. I have no doubt that your mother
>     Loves you tremendously, and I'm not being facetious here--
>
>     MR. DIER: If you hear--
>
>     THE COURT: Because it's obvious.—
>
>     MR DIER: --The tape…
>
>     THE COURT: --It's obvious to everybody in this proceeding that you have
>     The closest, most intense relationship with you and your mother. That is a
>     A given as far I'm concerned. That is a fact I would find, I will find, and
>     I think the Petitioner could probably **STIPULATE**. And is that correct Ms. Heydon
>     [counsel for the petitioner, Howard County Department of Social Services].
>
>     MS. HEYDON: YES, it is, Your Honor.
> *****************************************************************
>
>     THE COURT: I have no doubt that—your mother would have designated
>     Either you or Michele, your sister, to be the people to make those
>     Decisions. I have no doubt about that, that your other would have done
>     That, and would certainly not have designated a public agency to do so . ….

PLAINTIFFS submit that there was not even the appearance of justice in this case. The

linkage between the trial court and court appointed counsel has been in part set forth and

it will be further shown in this Petition in unmistakable and shocking detail, so as tol

constitute a fatal" "structural" defect in these proceedings that rendered the March 7,

2006, trial by the court depriving DOROTHY DIER OF of life, liberty and property null

and void.

2. On September 28, 2005, a petition for the appointment of a Guardian of the

Person(Case No. 13C-05-63324) was filed by the Howard County Department of Social

Services, in State of Maryland, Howard County Circuit Court and on October 4, 2005, the

trial court appointed Anthony Doyle, as court appointed counsel for DOROTHY DIER.

a- Immediately upon being notified of this proceeding Jerry L. Dier, the son of
DOROTHY DIER an attorney licensed to practice law in the State of Maryland entered
his appearance as counsel for his mother and filed a Response to said petition.

b- At the initial hearing on October 14, 2005, the trial court removed Jerry L. Dier as
counsel finding that his role as counsel would be inconsistent with the allegations
contained within the petition which were vehemently denied by Jerry L. Dier, And later
found by the court to have been Abandoned by the petitioner-failure to produce evidence
at trial or at any proceeding consistent with the rules of evidence.

c- However, the trial court allowed Jerry L. Dier to fully participate in the proceedings as
an **INTERESTED PERSON.**

d- Said petition required two physician certificates(Maryland Rule 10-201©)(10) and 10-
202, and both filed certificates were founded on observations and care rendered in the
Washington, D.C.

e-The petitioner **ABANDONED** Allegations contained within said petition concerning
Jerry L. Dier as to both the failure to produce evidence

> THE COURT: Well, I think we're bound by the –we can't take
> representations of  what you say other testimony would be that
> you[petitioner] haven't presented, So –

and the voluntary entry into the Stipulation set forth in  paragraph 1, above, concerning

the love, care and devotion of Jerry L. Dier to his mother, DOROTHY DIER, so

undeniably demonstrate. In addition, the petitioner further Abandoned the Required two

physician certificates, both founded on observations and care rendered in Washington,

D.C. and also, both taken in secret apparently in the early morning hours, without either

the consent of DOROTHY DIER or her family Thereby most certainly contrary to

DOROTHY DIER'S right to privacy and inconsistent with the law, neither being offered

into evidence nor referred to by the petitioner at trial. The petitioner secured a new set of

physician certificates which were secured contrary to Maryland law, in that 1- if the first

set were deemed inadequate the petition should have been immediately dismissed not

meeting the filing standards for a guardianship of the person petition, 2- Maryland law

makes no provision for a second set of physician certificates under the circumstances of

this action, and 3-there was an outstanding REQUEST FOR PROTECTIVE ORDER

filed by Interested Person Jerry L. Dier at the time the second set of physician certificates

were completed. This second set of physician's certificates were gained in January 2006,

again grounded in whole on observations and care rendered to DOROTHY DIER in

Washington, D.C. At the time this second set of physician certificates were secured there

was an outstanding Motion for a Protective Order filed by Interested Person Jerry L. Dier,

to protect his mother from such action, totally ignored by the petitioner and the trial

court. At trial one of the two doctors who authored one of the second set of physician

certificates testified basing his testimony solely on observations and care rendered in

Washington, D.C.

The remaining portion of the Department of Social Services cause of action at trial during

the guardian of the person action was said physician certificate and the testimony of its

author, both grounded solely on medical observations, care and treatment received in the

Washington, D.C.

3-At the initial hearing, October 14, 2005, initial hearing, October 14, 2005, court

appointed counsel acknowledged in response to Jerry L. Dier's inquires, questions

and representations that the affirmative statements in his filed Answer to

Petition(Appendix 2) and his statements to the court, on their face purportedly expressing

the desires and wishes of DOROTHY DIER and placed under his signature, including but

not limited to a waiver of Jury trial, a waiver of right to be Present and expression of

DOROTHY DIER'S desire to have a guardian of the person appointed, as well as factual

representations in response to said petition were made **WITHOUT CONSULTATION**

of his court appointed client, DOROTHY DIER. The court now armed with full

knowledge, stated,

> "But I think there's a lot of things here and like, for example Mr.
> Doyle has not been, for whatever reason, has not been able to see
> the disabled person. ...,"

BUT took no affirmative action against court appointed counsel, thusly, had in fact

pardoned the unpardonable by not immediately removing court appointed counsel in

order to protect DOROTHY DIER'S rights guaranteed under the United States

Constitution. Anthony Doyle, court appointed counsel for DOROTHY DIER Answer to

Petition, read in pertinent part

> That in further answer thereto, the Respondent waives her right to have
> This matter tried before a jury, as well as her right to appear before this
> Honorable Court.
>
> WHEREFORE, having fully answered the Petition, the Respondent prays
> This Court to:
>
> A. Appoint a guardian of her person;
> B. Accept her waiver of her right to a jury trial and her right to appear at a
> Hearing;

4- Attentiveness of Anthony Doyle, court appointed counsel during proceedings where

DOROTHY DIER'S interests were at risk a-on October 25, 2005, the trial court

admonished court appointed counsel asking him **"Are you awake?,"** after commenting

that he had found court appointed uncharacteristically silent, and b- during the

trial on March 7, 2006, the trial court had to further make inquiry of a silent court

appointed counsel by asking him, **"Are you all right"**

5- In addition during a hearing on February 2, 2006, as regards the health, safety and

well-being of his client DOROTHY DIER, who had been moved from Washington D.C.

pursuant to Court order the day before to the Summit Park Nursing and Rehabilitation

Facility in Baltimore County by the designated agent of the court, the State of Maryland,

Howard County Office of Aging with Ophelia Ross managed said move, without having

performed due diligence pertaining to its suitability to meaningfully meet DOROTHY

DIER'S needs, Anthony Doyle's participation in this hearing was marked by his request

for permission to leave the courtroom by the backdoor during the hearing, he had a

meeting to attend, and was excused by the trial court, the hearing continued to his

absence and he returned approximately 30 minutes later.

> MR. DOYLE: Your Honor, let me interrupt. I've got a meeting to--
>
> THE COURT: Oh yeah, you need to—
>
> THE COURT: Yeah, why don't you—why don't you take—
>
> MR. DOYLE: **Can I go out the back door**?(emphasis added).
>
> THE COURT: **Sure**.(emphasis added).

6- During the March 7, 2006, trial by the court, court appointed counsel in addition to

conducting himself as referenced in above paragraphs 3-5, court appointed counsel only

asked Five(5) questions of a secondary witness during the whole of the petitioner's case,

and moreover, these 5 questions were only asked after being admonished by the trial

court as referenced in paragraph 4.

7- The trial court's finding included what is referenced in paragraph 1 as regards Jerry L.

Dier being described as the most concerned and caring son he had ever known, so

Stipulated by the petitioner and that if the choice was one to be made by DOROTHY

DIER she would most certainly want her son to continue to assist her as he always had.

However the trial court found DOROTHY DIER'S son was overly optimistic in his

expectations concerning his mother and therefore there was no reasonable viable

alternative available, Thereby requiring the appointment of guardian of the person for

DOROTHY DIER. The court appointed the Howard County Office of Aging, as

temporary guardian and as the agent of the court managed DOROTHY DIER'S

movement to Summit Park(1502 Frederick Rd), a nursing and

rehabilitation facility, an institution located in Baltimore County, State of Maryland,

without having exercised due diligence, being unfamiliar with said facility not having

thoroughly investigating its bona fides as a proper placement for DOROTHY DIER. By

happenstance, that facility, Summit Park(1502 Frederick Rd.), turned out to be,

**ACKNOWLEDGED BY JUDGE SWEENEY**, only three houses away from his sister

lived and miraculously only a few blocks away from the office of Anthony Doyle(1002

Frederick Rd.), the counsel appointed by the trial court in this matter. Both Judge

Sweeney's sister's residence and the office of Anthony Doyle were in Catonsville,

Baltimore County.

8- An appeal to the Court of Special Appeals for Maryland followed,

captioned Jerry L. Dier v. Phyllis Macdachy Guardian et al.

No. 236, September Term 2006. Said appeal was filed on or about March 29, 2006, and

Interested Person, Jerry L. Dier at the trial filed an appeal brief on July 24, 2006, in

behalf of his mother DOROTHY DIER. Transparency is required as regards the appeal

process in the Court of Special for Maryland. Said appeal was cited as an Expedited

Appeal, pursuant to Maryland Rule 8-207

> **Rule 8-207. Expedited appeal.** (a) Adoption, guardianship,
> child access, child in need of assistance cases. (1) This
> section applies to every appeal to the Court of Special
> Appeals (A) from a judgment granting or denying a petition
> For adoption, guardianship terminating parental rights, or
> Guardianship of the person of a minor or disabled person. ...

Judge Dennis M. Sweeney found DOROTHY DIER A "disabled person," in his March 7, 2006 Court Order and in need of a court appointed "guardian of the person.

The Court of Special Appeals for Maryland on August 22, 2006, two days before the response was due(and filed) from the State of Maryland, Attorney General's Office representing the State of Maryland, Howard County Office of Aging, ordered that the case be decided without oral argument. The case was submitted on briefs, and as set forth in Maryland Rule 8-207 (a) (5)

> , ,,, The decision **shall(emphasis added)** be rendered within
> **60(emphasis added)** days after oral argument or submission
> of the appeal on briefs filed.

On Saturday, December 16, 2006, no response was received. Mr. Dier called the office of the clerk for the Court of Special Appeals for Maryland on Monday, December 18, 2006, and was initially told that no decision had been rendered in Appeal No. 236, September 2006 Term. Upon further inquiry Mr. Dier was told that there had been a clerical computer error, and the proper box had not been marked noting that this was an **Expedited appeal, although throughout the process all dates had been set pursuant to the special rules that guide Expedited appeals.**

Mr. Dier further spoke to the Clerk of the Court, Ms. Leslie Gidet, who informed him that she would check with the Court and get back to him, this was Monday morning. Ms. Gidet left a message for Mr. Dier on Friday, December 22, 2006, in the late afternoon, stating that she had contacted the Court, and they understood that there were

DEADLINES, however, it would still be **A LITTLE WHILE** before an opinion would be filed..

Four weeks plus have passed since December 16, 2006, twice the time allowed by Maryland Rules to file a motion for reconsideration **in Expedited appeals, and apparently "a little while" in the context of the case at bar is only an open-ended expression of intent, most certainly not sufficient in an Expedited Appeal.**

In consideration of the sensitive and serious issues bar, DOROTHY DIER has For practical purposes exhausted her remedies at law in the State of Maryland and at this juncture no further corrective action is available necessitating this request for a Writ of Habeas Corpus at this point in time, as well as for relief under Title 42 U.S.C. 1983.

9- While the appeal was pending a guardian of the property of DOROTHY DIER was filed by Summit Park. The same trial court as in the guardian of the person action was assigned to the guardian of property action(Case No 13-06-065465 ). The trial court appointed in turn the same attorney, Anthony Doyle for DOROTHY DIER. This is the same Anthony Doyle who at the best could be said to have done no good for his court appointed client DOROTHY DIER, while conducting himself under the apparent protection of the court in a manner and fashion consistent with the trial court's clearly noted preconceived notion of how guardianship actions should be processed in his system under his notion of justice. The trial court's appointment of Anthony Doyle was a strong message, right in your face to DOROTHY DIER and her son Jerry L. Dier, in that the guardian of person case was pending in the Court of Special Appeals for Maryland with the issue of the lack of effectiveness of court appointed counsel front and center. The trial court apparently deemed itself **Untouchable** in the **Maryland Court System.**

16

Judge Sweeney's further appointment of Anthony Doyle for DOROTHY DIER

had the effect **Casting a New Light**, by bringing to the forefront matters such as the

impartiality of the trial front and center which now clearly reached well beyond the

previously thought constitutional dimensions of effective assistance of counsel and a

terribly misguided court to a **NEW AND EVEN MORE DANGEROUS ARENA** where

**NOW** it was apparent that court action and attorney conduct were joined at the hip and

the **Rule of Law** had been caste aside. It is well accepted in criminal law practice that

subsequent acts can be admissible if probative of intent, identity of person and/or

purpose, and absence of mistake tending to clearly show and demonstrate signature

criminal activity or as in this action probative as to intent and identity of purpose.

DOROTHY DIER'S son, Jerry L. Dier requested that the trial court recuse itself from

the proceedings going point by point demonstrating a clear and unmistakable signature

that something had terribly gone wrong, justice was nowhere to be found, and the rule of

man, at least only hopefully for the moment had prevailed over the Rule of Law. The trial

court and court appointed counsel acting in concert from the outset, had the ultimate

result of violating and continuing to violate PLAINTIFF'S Sixth, Eighth and Fourteenth

Amendment Rights set forth in the United States Constitution under the color of State

law, Title 42 U.S.C. 1983, so as to make it necessary in the interests of justice and human

dignity to remove DOROTHY DIER from the custody of Maryland State authority. by

the august majesty of the Great Writ( United States Constitution, Article, I , Sect. 9 and

28 U.S.C. 2254-2255) and return her to acknowledged caring and concerned every

waiting embrace of her son, Jerry L. Dier, away from the State court and its delegated

agent that through its supervisory authority has had the ability to control DOROTHY

DIER to her detriment with impunity.

It surely cannot be argued that an alleged disabled person deserves fewer procedural and

substantive safeguards than an accused criminal in proceedings seeking to cause a

deprivation of life, liberty and property. The Court of Special Appeals for Maryland in In

Re Sonny E. Lee, 754 A.2d 426, 438 and 439 (Md. App. 2000) in discussing the role of

counsel and his duty to protect his client's interests held,

> Due process demands nothing less, particularly as here, when the alleged
> Disabled person faces significant and usually permanent loss of his basic
> Rights and liberties. See *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct.
> 893, 902, 47 L. Ed. 2d 18 (1976) (stating that the "[t]he right to be heard
> heard before being condemned to suffer grievous loss of any kind even
> though it may not involve the stigma and hardship of a criminal conviction
> is a principle basic to our society") (quoting *Joint Anti-Fascist Comm.*
> *v. Mc Grath*, 341 U.S. 123, 168, 71 S. Ct. 624, 646 95 L. Ed 817 (1951)
> (Frankfurter, J. concurring); see also *Lassiter v. Department of Soc. Servs.*
> *of Durham County, N.C.* 452 U.S. 18, 26-27, 101 S. Ct. 2153, 68 L. Ed 2d
> 640 (1981), *reh'g denied*, 453 U.S. 927, 102 S. Ct. 889, 69 L. Ed.1023
> (1981). In a guardianship proceeding effective representation by counsel
> insures that the proper procedures are followed by the court. ...

In the case at bar, the trial court and court appointed counsel acted as "one" with the trial

court driving the train with no one but Interested Person Jerry L. Dier, the son of

DOROTHY DIER to attempt to protect and safeguard his mother's guaranteed rights

under the United States Constitution, with the trial court and court appointed counsel

thwarting the due and just exercise of those rights at every step, placing DOROTHY

DIER'S  right to a Jury trial, U.S. Constitution Amend. VI, beyond her reach, so as to

make certain that their voice would be the only one heard.

## JURISDICTION AND VENUE

**Jurisdiction**

**10-This action** arises under the United States Constitution, particularly the on the Sixth, Eighth and Fourteenth Amendments, Article I, Sect. 9, Habeas Corpus, and under Federal law, specifically, Title 28 U.S.C. Sect. 2254 and 2255 and Title 42 U.S.C. Sect. 1983. This court has jurisdiction over PLAINTIFF'S claims relating to the State of Maryland, Howard County Circuit Court, Judge Dennis M. Sweeney's conduct holding DOROTHY DIER disabled, and appointing as guardian of the person, State of Maryland, Office of Aging, Howard County relating to PLAINTIFF'S' civil claims arising under the United States Constitution and federal law pursuant to 28 U.S.C. 1331, 28 U.S.C. 2254 and 2255, and 42 U.S.C. 1983. Each and all of the acts alleged herein were done by the Defendants under the color and pretense of state law, statutes, ordinances, regulations, or customs.

**Venue**

11- Venue is proper under 28 U.S.C. Sect. 1391(b)(2) , the operative language reads in

pertinent part,

> if the United States District Court for the District of Columbia is
> the judicial district in which a substantial part of the events giving
> rise to the claim occurred.

In the case at bar, the matter was commenced by the petitioners, State of Maryland,

Howard County Department of Social Services( hereafter, referred to in the main as the

"Department"), at a time when DOROTHY DIER, September 2005, was in the District of

Columbia to receive medical treatment. To meet Maryland law, apparently at the request

of the Department, the two so called physician certificates as regards disability were

completed grounded solely on medical examinations taking place completed in

Washington, D.C. at a time when DOROTHY DIER hospitalized in the District of

Columbia, September 7, 2005 through September 23, 2005, and said certificates were

later filed accompanying the petition for guardian of the person in the State of Maryland,

Howard County on September 28, 2005. Neither said filed physician certificate was

referred by the Department in the guardian of the person proceedings and in mid to late

January 2006, the Department filed two additional physician certificates gathered in spite

19

of the fact that Interested Person Jerry L. Dier had filed, December 30, 2005, a Motion

for a Protective Order, as regards mental examinations of his mother, not ruled upon

during the time period when said two additional physician certificates were gained as

regards disability of DOROTHY DIER, again grounded on medical examinations taking

place solely in Washington, D.C. while DOROTHY DIER was receiving medical

treatment(Washington Hospital Center) from January 8, 2006 to February 1, 2006. The

four physician certificates and the physician who authored one of the certificates who

testified at trial were **ALL** based on **observations** when DOROTHY DIER was **in the**

**District of Columbia**. Moreover, DOROTHY DIER only left the District of Columbia

pursuant to actions pursuant to Court Order by Judge Sweeney) and managed by the State

of Maryland, Office of Aging, Howard County, a move not made known to the family of

DOROTHY DIER until it was in progress.

As set forth in above paragraph 2(e) both issues of allegations contained within the filed

petition for guardian of person and physician certificates required to be attached to said

petition were **Abandoned** by the petitioner, leaving the trial court to decide the question

of disability on a further filed physician certificate and the testimony of its author which

was grounded **soley** on said physicians evalutation of DOROTHY DIER as a patient at

the Washington Hospital Center in Washington, D.C. for approximately three weeks

during January 2006. Therefore, this Court has jurisdiction, a substantial part of the

events grounding the claims set forth arose as a result of **conduct** taking place **in** the

**District of Columbia**.

The State of Maryland(Maryland Rule 10-201 and 10-202) required physician certificates

were completed by 1- physicians located in the District of Columbia, 2-examining

DOROTHY DIER in the District of Columbia and 3-the only contact they had with the

State of Maryland were that their certificates were filed in a Maryland action and 4-one

of the physicians who authored a certificate testified at trial outside the District of

Columbia, in the State of Maryland, to what he observed and noted as regards

DOROTHY DIER at a time when she was in the District of Columbia under his care,

while he was associated with the District of Columbia medical facility, Washington

Hospital Center where DOROTHY DIER was a patient.

And 5- DOROTHY DIER was removed from the Washington Hospital Center against the

wishes of her son, to a facility, Summit Park in Baltimore County by the Office of Aging,

Howard County, by authority of the State of Maryland Howard County Circuit Court.

Not within the jurisdiction of either said Court or the Office of Aging, Howard County.


Personal Jurisdiction

As regards the issue of personal jurisdiction over the State of Maryland, Howard County

Circuit Court and the Office of Aging, State of Maryland, Howard County, the D.C. long-

arm statute provides that courts in the District of Columbia may assert personal

jurisdiction over any person who acts directly or by agent, as to a claim for relief arising

from the person's " transacting any business in the District of Columbia' or "causing

tortuous injury in the District of Columbia." D.C. Code Ann. 13-423(a)(1), (3), (4). In the

case at bar, amongst other matters, either Judge Dennis M. Sweeney, State of Maryland,

Howard County Circuit Court or through its agent, Office of Aging, State of Maryland,

Howard County named temporary guardian by order of the court on January 23, 2006,

**secured** physician certificates from medical personnel at the Washington Hospital Center

while DOROTHY DIER was a patient at the Washington Hospital Center in the District

of Columbia, **secured** medical testimony from medical personnel at the Washington

Hospital Center to be used in the guardian of the person action while DOROTHY DIER

was a patient at the Washington Hospital Center in the District of Columbia, **guided** the

care and treatment of DOROTHY DIER, including the placement of a feeding tube,

while she was a patient in the Washington Hospital Center in the District of Columbia

and **ordered** that DOROTHY DIER be removed from the Washington Hospital Center to

Summit Park, Baltimore County, Maryland

(MR. DIER: ... .The individual—individuals that placed my mother in this facility are
Miss Ross and the Department of Aging, And—

THE COURT: Under this Court Order, September 22, 2006, trial).

The cause of action as presented to Judge Dennis M. Sweeney at trial on March 7,

2006,stripped of its Abandoned allegations was grounded on medical evaluations of

DOROTHY DIER rendered when DOROTHY DIER was in the District of Columbia, the

hospital was in the District of Columbia, and the medical doctors were located in the

District of Columbia-the **situs** of material and substantial activity which was the basis for

the cause of action going forward according to the Maryland Court's rulings was

undeniably in the District of Columbia, Thereby founding any and all physician diagnosis

and prognosis attendant to DOROTHY DIER on her presence in the District of

Columbia. Therefore, this judicial district, the District of Columbia, is the place where a

material and substantial part of the events giving rise to the claim filed in Maryland

occurred.

**THE PARTIES**

22

Plaintiffs

12. Plaintiff Dorothy Dier is a citizen of the United States and pursuant to State of Maryland, Howard County Circuit Court order is in custody residing at Summit Park in the State of Maryland, Baltimore County.

13. Plaintiff Jerry L. Dier is a citizen of the United States and the natural son of DOROTHY DIER.

Defendants

14. Defendant Office of Aging, Howard County, State of Maryland is the court appointed(State of Maryland, Howard County Circuit Court) guardian of the person for DOROTHY DIER.

15. Defendant Judge Dennis Sweeney is presently a Howard County Circuit Court Judge, State of Maryland. He is named in his official capacity as regards his conduct under color and authority of state law.

## SUMMARY OF FACTS

**State of Maryland, Howard County Circuit Court-The relationship between the trial court and court appointed counsel**

16- On September 28, 2005, the Department filed a petition for guardian of the person for

DOROTHY DIER in the State of Maryland, Howard County, Circuit Court. Said petition

was accompanied by the two physician certificates secured contrary to law without either

notice or the consent of DOROTHY DIER or her family. Said physician certificates and

accompanying allegations were Abandoned by the petitioner during the course of the

proceedings and at trial.

17. The chronology of court proceedings in Howard County Circuit Court is as follows,

a-petition for guardian of the person filed in Case No. 13 C-05-063324, September 28,

2005, Anthony Doyle appointed as counsel for DOROTHY DIER, October 4, 2005, b-

initial hearing, October 14, 2005, wherein it came to Judge Sweeney's attention that court

appointed counsel in his Answer to Petition(Appendix 2) under his signature and in his

representations in open court had misrepresented to the Court that DOROTHY DIER had

"waived" her rights under the United States Constitution to Jury trial, and to be Present,

and in addition had affirmatively stated that DOROTHY DIER desired to have a guardian

appointed by the court as well as other factual statements concerning allegations in the

petition for guardian of the person, ALL DONE WITHOUT CONSULTATION OF HIS

COURT APPOINTED CLIENT, c-October 25, 2005, status hearing, d-December 7,

2005, status hearing, e- status hearing, January 4, 2005, f--temporary guardian of the

person hearing, January 23, 2006,  g--status and motions hearing, February 2, 2006, h-

trial by the court, March 7, 2006 and order appointing guardian of the person entered

March 7, 2006, i--Appeal, Court of Special Appeals for Maryland followed, No. 236,

September 2006 Term, j- guardian of the property action filed in Howard County Circuit

Court, Case No. C-13-06-065465, May 16, 2006, k- Anthony Doyle appointed by the trial

court as counsel for DOROTHY DIER, May 25,,2006, l-guardian of property trial

continued without informing Interested Person Jerry L. Dier, he appeared in court,

September 6, 2006 to September 22, 2006, m- guardian of property hearing including

both a recusal request and trial, September 22, 2006, n--motion for reconsideration and

Supplement filed on September 25, 2006 and September 27, 2006, respectively  o-

memorandum and order by the court(Appendix 3 ) denying said motions denied, dated

September 27, 2006, p-court order appointing a guardian of property court entered

October 4, 2006, and q- appeal filed on or about October 5, 2006, Appeal No. 1595,

September 2006 Term..

18- Anthony Doyle, court appointed counsel for DOROTHY DIER filed an Answer on

October 14, 2005, WITHOUT CONSULTATION **waiving** DOROTHY DIER'S right

under the United States Constitution to Jury trial, right to be Present, affirmatively stating
that DOROTHY DIER wanted a guardian of the person appointed as well as making
factual representations as if they were those of DOROTHY DIER regarding allegations
within said petition.

19- Anthony Doyle acknowledged the conduct described in above paragraph 18, which
was consistent with the nature and fashion which the trial court evidenced by this
statement on September 22, 2006, by Judge Sweeney in response to Mr. Dier's fact based
assertions as regards Anthony Doyle concerning the breath of Anthony Doyle's
representation of DOROTHY DIER under Judge Sweeney's stewardship

> [The court] As to the allegations regarding—suggested that Mr. Doyle
> is not adequately performing his function, the Court has, for the past
> 15 years, has utilized Mr. Doyle as well as every other judge of this
> Court, to my knowledge, in Court appointments and his competence
> And abilities and –are well-known to the Court to be more than adequate
> And quite frankly, that's one of the reasons that, not only myself, but other
> Judges of this Court, have—frequently appoint him as well as taking the
> Time to do it. .

Seemingly, Judge Sweeney said more then he meant in his statement in support of
Anthony Doyle, who quite frankly, his actions as well as those of Judge Sweeney are
indefensible if the Rule of Law is to be upheld and human dignity, the interests of justice
and the integrity of the judicial process are deemed worthy of protection by those who are
empowered to monitor it and afford protection, not abuse, to those innocents that come
under vast umbrella.

20- At a brief status hearing on October 25, 2005, the trial court admonished court
appointed counsel for being uncharacteristically silent, asking him if he was awake?

21- At a status hearing on February 2, 2006, when matters such as the care, safety and

well being of court appointed counsel's client, DOROTHY DIER were being discussed

due to her transfer to the Summit Park facility without the temporary guardian, the Office

of Aging, Howard County, having done the necessary due diligence such as familiarity,

first hand knowledge as regards the facility prior to DOROTHY DIER'S transfer to

Summit Park the day before, as well as a hearing on motions filed and raised by

Interested Person Jerry L. Dier in behalf of his mother directed to both procedural and

substantive due process considerations protected by the United States Constitution and

Maryland Law, Anthony Doyle, after twenty or so minutes when

he was in the main silent interrupted the hearing requesting that the trial court allow him

to attend a meeting. The trial court without hesitation agreed and Mr. Doyle asked the

trial court if he could exit by the back door and the court replied. Relevant and potentially

critical matters such as Summit Park's prior history and independent evaluations of its

care structure brought to the court's attention by Interested Person Jerry L. Dier, which

included an article noting that some years earlier Summit Park was by its paperwork

seemingly providing good care for a patient, but for one most important matter, the

patient had passed away some time earlier.

> THE COURT:Sure.". ... We can go on without
> Mr. – without Mr. Doyle. All right go ahead[to Mr. Dier].

22- Furthermore, during said February 2, 2006, status/motions hearing the trial court

noted familiarity with Summit Park, stating that his sister lived only three houses from it

and that he thought he had been inside said facility. See paragraph 37 for further detail.

23- On February 2, 2006, when discussing the financial status of DOROTHY DIER with

Mrs. DIER'S daughter, Michelle Lyons, the trial court stated that one can not expect

Mercedes Benz treatment on a Chevrolet budget. The trial court did not understand the

nature of his obligation as judge, the issue being not whether DOROTHY DIER should

reasonably expect the best treatment and care in accordance with her needs, but would

she get the kind of treatment and care that was reasonably consistent with her needs and

condition.

24- The trial court further stated that it had heard information about Summit Park but

instead of appointing an independent investigator, he said he was not going to make any

judgments.

25- At trial, on March 7, 2006, the petitioner Abandoned all pretence as regards

purported the truth of its September 28, 2005, filed (petition) allegations and the

accompanying physician certificates. The petitioner offered in its place the testimony of a

physician who also authored a newly filed physician certificate, although there is no legal

authority for such action, with both said certificate and testimony grounded solely on the

physician's contact with DOROTHY DIER while she was a patient in a Washington,

D.C. hospital, the Washington Hospital Center, during January 2006.

26- At trial, the court *sua sponte* found it necessary to present a more complete record

and under some misplaced notion of the  proper use of the incorporation by reference

doctrine, held that the testimony from all prior proceedings leading to the trial were to be

considered part of the trial record, without addressing the basic hornbook requirements as

regards the protections afforded pursuant to the United States Constitution, Sixth

Amendment and Fourteenth Amendment, confrontation clause, the unavailability of

witnesses, identity of parties, identities of issues, and prior opportunity for meaningful

cross examination as regards the issues at bar in the present action and availability of the

transcript..

27- The trial court found that even though he acknowledged and the petitioner so

Stipulated that Jerry L. Dier, DOROTHY' DIER'S son was the most caring and loving

son that he had ever heard of and that if DOROTHY DIER was given the choice she

would most certainly choose him as her guardian, however he chose the Office of Aging,

Howard County as the guardian of the person for DOROTHY DIER, the governmental

institution who managed the placement of DOROTHY DIER at Summit Park, outside its

geographical area of familiarity, and had attempted to gain a further physician certificate

after Judge Sweeney brought to inadequacy of one of the filed certificates to everyone's

attention in open court on December 7, 2005, by the use of trick and deception..

28- In the guardian of person action, DOROTHY DIER was **not present** and

her absence was not addressed at the guardian of the person status hearings, October 25,

2005, December 7, 2005, January 4, 2006, the so called emergency guardian of the

person hearing, January 23, 2006, the status/motions hearing, February 2006, and the

trial, March 7, 2006. In addition, DOROTHY DIER was not present during the

September 22, 2006, recusal hearing and guardian of property trial.

Judge Sweeney's October 4, 2006, Court order(Appendix 4), pertaining to the guardian

of the property trial, reads in pertinent part,

> The Court finds after hearing, that the disabled person cannot be
> present because of physical and mental incapacity

However, thee trial court did not hear or address at trial the issue of DOROTHY DIER'S

**absence** from the  September 22, 2006, recusal hearing and trial by the court. This was a

continuation of the trial court's conduct throughout these proceedings depriving

DOROTHY DIER of her rights under the United States Constitution as if she was a non-

person..

Judge Sweeney's earlier filed Court order, March 7, 2006, in the guardian of person

action, reads in pertinent part,

> WHEREAS, the Court finds that the disabled person cannot be present
> Because of a physical or mental incapacity and is unable to consent to
> The appointment of a Guardian of the Person; and

DOROTHY DIER did not attend either the trial or any of the proceedings in this action

for guardian of the person and no inquiry was made regarding her absence by the Court

or an explanation offered by her court appointed counsel, but for initial representations in

court appointed counsel's Answer to Petition filed Without Consultation with his client.

There is an affirmative obligation under Maryland law for the trial court to properly

inquire and for court appointed counsel to assist if appropriate under Maryland law as

regards the status of the person before the court,

> Presence at hearing; presentation of evidence; closed hearing; sealing, ... .
> The person alleged to be disabled is entitled to be present at the hearing
> Unless he has knowingly and voluntarily waived the right to be present
> Or cannot be present because of physical or mental incapacity. Waiver
> Or incapacity may not be presumed from nonappearance, but **SHALL**
> (emphasis added) be determined on the basis of factual information
> supplied to the court by counsel or a representative appointed by the
> court. Md. Ann. Code, Estates and Trusts 13-705(e).

In the case at bar, the guardian of person action, matters concerning the absence of

DOROTHY DIER were presented by Interested Person Jerry L. Dier during the course

of an earlier proceeding in the action and ignored by the court. The Court order was

entered within minutes of the conclusion of the action and given to Mr. Dier by a clerk of

the court, was apparently that proposed by the petitioner and the trial court just signed off

on it rather than having it conform to the evidence adduced at trial.

**New Information that Came to Light after the Guardian of the Person Proceedings that Directly Related to the Relationship Regarding the Trial Court and Court Appointed Counsel in that Proceeding**

29- Summit Park filed a petition for guardian of property for DOROTHY DIER on May

16, 2006, in State of Maryland, Howard County Circuit Court.

30- The same trial court, Judge Dennis M. Sweeney, State of Maryland, Howard County

Circuit Court appointed Anthony Doyle as court appointed counsel for DOROTHY

DIER in a guardian of property proceeding initiated by Summit Park, a purported

creditor- petitioner who had no standing under the law in the State of Maryland to file

said petition. (Maryland Rule 10-301(a) Who may file. The trial court's reasoning

seemingly was that DOROTHY DIER would have to pay for care and treatment

wherever she was and since she was where the court placed her, that place Summit Park

should be paid, and Summit Park was the best entity to bring this request before the court

even if in the form of a guardian of property action, a concern beyond the bounds of the

proceeding.

31- The guardian of property petition stated that DOROTHY DIER resided at Summit

Park in Baltimore County, so as to place DOROTHY DIER by admission of the

creditor/petitioner Summit Park outside the venue of the Howard County Court.

Maryland Rule 10-301(b) Venue, which defines 'venue' in terms of where the subject

resides at the time of the filing of the petition, outside of the jurisdiction of the Howard

County Circuit Court. The trial court's reasoning was that was just a mere technicality,

since it[the Court] had placed DOROTHY DIER OUTSIDE its jurisdiction.

32- On September 22, 2006, during the guardian of property hearing the trial court

demonstrated an inability to acknowledge for whatever reason the reality of the legal

ramifications of its conduct that seemingly had its origin in its inability to act as a fair and

impartial judge, so as assure the orderly administration of justice consistent within the

framework of the Rule of Law, and in its place the trial court resorted in its Memorandum

and Order denying(September 27, 2006) the request of Interested Person Jerry L. Dier for

Reconsideration and a Supplement thereto, to the long discarded tactic of labeling and

avoidance, rather than judicially addressing the important issues pertaining to a guardian

matter where the rights of an alleged disabled person are most in need of protection in the

form of the conduct of a trial where the Rule of Law must be upheld, rules of evidence

accorded their proper place and justice is rendered within the metes and bounds of a

justice system whose integrity is unquestioned.

33- Interested Person Jerry L. Dier requested the trial court recuse itself from hearing the

guardian of property matter and certify the issue of determination of recusal to the

Administrative Judge for the Circuit. The trial court insisted on hearing from Interested

Person Jerry L. Dier, as regards the substance of his request and then denied the request

for recusal.

34- The substance of the request was the NATURE AND FASHION of the relationship

between the trial court, Judge Dennis M. Sweeney, State of Maryland, Howard County

Circuit Court, and court appointed counsel, Anthony Doyle, such that moved the

seasoned trial court to appoint the same counsel to represent the same person,

DOROTHY DIER in a guardian action only months after an earlier guardian action,

which was pending before the Court of Special for Maryland, in which the actions of

court appointed counsel and those of the trial court in commenting and regulating the

conduct of court appointed counsel were more then just open to question, court appointed

counsel's conduct was so much more than ineffective and unethical, yet the trial court re-appointed him to represent DOROTHY DIER.

35- The matters addressed in paragraphs 3 through 6 set forth the issues of court appointed counsel making affirmative representations waiving DOROTHY DIER'S rights under the United States Constitution to Jury trial, right to be Present as well as affirmatively requested a guardian of the person be appointed, ALL DONE WITHOUT CONSULTATION, HIS ANSWER TO PETITION, AND ENTERED IN THE RECORD BY COURT APPOINTED COUNSEL AT THE INITIAL OCTOBER 14, 2005, HEARING WITH BOTH COURT ACKNOWLEDGEMENT AND ACQUIESCENCE. In addition, the trial court admonished court appointed counsel on October 25, 2005, as regards his silence, asking him are you awake, and furthermore, during the March 7, 2006, trial, court appointed counsel having been silent for an extended period of time, the trial court asked him if he was all right and only then did court appointed counsel ask a few questions of a secondary witness.

36- During the midst of a February 2, 2006, status/motions hearing with issues concerning the health, safety and well being of his client, DOROTHY DIER, being addressed, court appointed with permission of the trial left by the back door to attend a meeting and the hearing continued.

37- In addition, during the recusal portion of the September 22, 2006, guardian of property hearing Interested Person Jerry L. Dier brought to the trial court's attention that he had voluntarily stated at the February 2, 2006, guardian of the person hearing that he his sister lived on three houses away from Summit Park and he thought he had inside the facility. The Maryland Code of Judicial Conduct, Canon 3, Performance of Judicial

32

Duties, Maryland Rule 16-813(D) Recusal reads in pertinent part, followed by a brief

history the Judge Sweeney's contradictory statements concerning his prior knowledge of

Summit Park,

> (1) A judge **shall(emphasis added)** recuse himself or herself from a
> proceeding in which the judge's impartiality might reasonably be
> questioned,including a instance when: (a) the judge has **Extra-Judicial**
> knowledge(emphasis added) of a dispute evidentiary fact concerning the
> proceeding;

### February 2, 2006

I know the place. I think I've actually been in there. My sister lives
Three houses away from it. So, I know the area. I know the place a
Little bit.

### September 22, 2006

I've never been in Summit Park at all.

### Memorandum and Order, September 27, 2006

The Court did not select the nursing home for Ms. Dier, and had only
The most general knowledge of the facility, as placed on the record.
This series of assertions by Judge Sweeney in addition to his further statements in his

Memorandum and Order dated  September 27, 2006, as regards court appointed counsel,

Anthony Doyle, including the trial court's evaluation of his representation and the

linkage of court appointed counsel to the trial court provides further insight into the trial

court's mindset..

a-the trial court's comments regarding Mr. Doyle being "awake" and "all right," "It in no
way reflected any observation about Mr. Doyle's lack of attentiveness.

b- "Mr Doyle's representation of Ms. Dier in these proceedings has been well within the
Court's expectations, and the Court commends Mr. Doyle for his patience and
forebearance in dealing with the totally unwarranted accusations and unrealistic demands
of Mr. Dier.

c-"Mr. Doyle did not seek the appointment, but took it on as a public service at the request of the Court, as he has done for over 15 years, oftentimes at great personal sacrifice and with only infrequently being paid near the going rate for his services."

38- The trial court entered a Order on October 4, 2006, appointed Thomas M. Meachum, Esquire as guardian of the property for Dorothy Dier.

39- During the course of the September 22, 2006, trial, both the want to be creditor petitioner, Summit Park and the trial court seemingly in concert suggested the name of the Reese Carney Law Firm as a source for finding guardian of property for DOROTHY DIER. Mr. Meachum, a member of that firm was selected by the trial court.

40- An internet search of Reese & Carney Law Firm lists a Thomas M. Meachum, (Reese & Carney) however, in describing his self described Practice Areas: Zoning Law; Administrative Law; State and Local Government Law; State Government Law and Employment Law and Local Law Government Law hardly a recommendation of expertise in what the trial court deemed as a contested guardian matter where everything is appealed.

41- It has not gone unnoticed that Mr. Meachum is a political person. On a five member bench in the Howard County Circuit Court, Mr. Meachum was the Treasurer as stated on posters placed throughout the County, in the recent political campaign to retain two other appointed judges who were up for election and ran for office together, with Mr. Meachum as the campaign treasurer for both. It it is self-evident that Mr. Meachum has a close personal tie to the Howard County Circuit Court, and the maintenance of the status quo, thus his appointment as guardian of property for DOROTHY DIER castes even further doubt on the integrity of the judicial process in Judge Sweeney's court and to whom Mr. Meachum owes his allegiance.

42- Even though Judge Sweeney attempted to coat Mr. Meachum's role in the same embellished terms he used to describe Mr. Doyle, as an attorney who had been of service to the court over the years, the question must be asked and the facts must be examined as regards who was being served and at whose expense..

## COUNT ONE

Violation of Fourteenth Amendment
Due Process Right to a Fair and Impartial Trial

43- PLAINTIFFS incorporate by reference paragraphs 1-42 as if fully restated here and not limited to the following further state:

44- Judge Sweeney became an advocate for guardianship during the proceeding for guardian of the person without any concern for due process of law totally and completely abandoning his rightful role to assure that the conduct of the proceedings protected DOROTHY DIER'S rights as guaranteed under the United States Constitution.

45- Judge Sweeney acted in concert with his chosen court appointed attorney, Anthony Doyle in violating and THEREBY denying DOROTHY DIER due process of law.

46- Once Judge Sweeney became an advocate for a guardianship in this action, it became impossible for Judge Sweeney to maintain his role as a impartial judge.

47- In addition, Judge Sweeney stated during the February 2, 2006, hearing when addressing Interested Person Jerry L. Dier's motion as regards the failure of both the court and court appointed attorney to address the issue of the appearance or non-appearance of DOROTHY DIER in accordance with Maryland, Estates and Trusts, 13-705(e), having its basis in the Sixth Amendment to the United States Constitution, the right to confront witnesses, Judge Sweeney stated,

> Even assuming the statutory jurisdiction was not able to be sustained, the
> Court believes it's **Inherent Powers**(emphasis added) as guardians of
> Persons with disabilities would fill in any gap in that determination.

This mindset has a historical ring to it that if followed to its logical conclusion would lead

this great Constitutional Republic based on a system of checks and balances to fall into

dark abyss where the Rule of Law falls victim to the rule of man.

### COUNT TWO

Violation of Sixth Amendment
Right to Effective Assistance of Counsel

48- PLAINTIFFS incorporate by reference paragraphs 1-47 as if fully restated here and

not limited to the following further state:

49- Judge Sweeney adopted a standard of competence whose only requirement was to

follow his lead and walk this mater through the court system- so be it that court appointed

counsel paid little if any attention to this matter, such as when he walked out by the back

door to attend a meeting when the health, safety and well-being of his client was at issue,

when he remained silent throughout lengthy parts of the proceedings including at trial

causing the trial court to comment, "Are you awake?" and "are you all right?" Thereby

violating the protection of DOROTHY DIER'S guaranteed rights under the United States

Constitution. It was apparent from the first hearing on October 14, 2005, that Mr. Doyle

could do no wrong as long as he did nothing right for his client. Without Consultation, as

Mr. Doyle acknowledged, he had affirmatively represented under his signature in his

Answer to Petition and in open court without pause, embarrassment or seemingly concern

for admonishment and/or punishment that DOROTHY DIER HAD WAIVED HER

RIGHT TO A JURY TRIAL(Maryland Rule 10-205(b)(1) AND TO BE PRESENT AT

THE INITIAL HEARING, OCTOBER 14, 2005, AND WITH THESE FACTS

AMONGST OTHERS, HAVING BEEN MADE KNOWN TO THE JUDGE

SWEENEY, HE AFFIRMED THAT THIS BLATANTLY UNETHICIAL

CONDUCT FIT WITHIN THE RANGE OF WHAT HE DEEMED TO BE

PERMISSIBLE AND APPARENTLY EXEMPLARY, NOT REPREHENSIBLE

CONDUCT ON THE PART OF COURT APPOINTED COUNSEL.

50- Judge Sweeney's actions in concert with his court appointed counsel for DOROTHY

DIER denied DOROTHY DIER a fair and impartial trial in violation of the Due Process

Clause of the Fourteenth Amendment to the United States Constitution as well as her

right to Effective Assistance of Counsel, Jury trial and Confrontation under the Sixth

Amendment to the United States Constitution as he purported to act as the impartial trial

judge under color of law.


### COUNT THREE

Violation of Sixth Amendment
Right to be Present and Confront Witnesses


51- PLAINTIFFS incorporate by reference paragraphs 1-50 as if fully restated here and

not limited to the following further state:

52-. Judge Sweeney gave mere lip service to DOROTHY DIER'S right to be present

protected by the Sixth Amendment of the United States Constitution as well as in

violation of State law, not even addressing the issue of DOROTHY DIER'S absence until

and unless the issue was directed to his attention by Interested Person Jerry L. Dier and

he then attempted to change the record by referencing back a finding that DOROTHY

DIER could not be present due to incapacity.

53- Maryland Rule 10-212, sheds further light on the right of the alleged disabled person

to be present.and how jealously the Maryland legislature has gone to assure that an

alleged disabled person is not deprived of their United States Constitution rights to life,

liberty and property which are in issue in a guardianship proceeding without affording the

alleged disabled every opportunity to be present.

> Waiver may not be presumed from nonappearance but shall be
> Be determined on the basis of factual information supplied by
> The person's attorney or a representative appointed by the court.
> Upon motion by or on behalf of the person alleged to be in need of
> Of emergency protective services that, because of his or her disability
> The person cannot attend at the courthouse, the court may hold the
> The hearing at a place to which the person has reasonable access.

## COUNT FOUR

Violation of Fourteenth Amendment
Right to Equal Protection of the Law

54- PLAINTIFFS incorporate by reference paragraphs 1-53 as if fully restated here and

not limited to the following further state:

55- As set forth in paragraph 53, the State of Maryland has set forth a procedure to

protect an alleged disabled person's constitutional right to be present and confront

witnesses at each and every proceeding in a guardian of the person action where

the person has life, liberty and property rights and interests at risk.

56- Denying DOROTHY DIER a fair and impartial trial merely because she was at that

point in time in the trial court's mindset to be incapacitated and disabled, questions oflaw

only to be decided after a trial on the merits,  violated her right to equal protection of the

law, under the Fourteenth Amendment to the United States Constitution.

## Count Five

Violation of Eighth Amendment
Cruel and Unusual Punishment

57- PLAINTIFFS incorporate by reference paragraphs 1-56, as if fully restated here and

not limited to the following further state:

**AMONGST OTHER MATTERS**

58- DOROTHY DIER was taken to Howard County General on or about December 23,

2006, after a brief stay of 10 days at a Howard County Assisted Living Residence, a

residence strongly recommended by the Office of Aging, Howard County,

represented by Ophelia Ross, whose live in owner and manager was a retired nurse. On

December 23, 2006, DOROTHY DIER appeared ill(found to be severely

dehydrated) and Jerry L. Dier called a doctor who had previously provided excellent care

and treatment for his mother at Montgomery General(in Montgomery County, Maryland)

and furthermore, had contacted an ambulance service to transport his mother to said

hospital. The ambulance was due to arrive within two hours and approximately one hour

later another ambulance service appeared at the Howard County Assisted Living

Residence while DOROTHY DIER was being fed breakfast and it took DOROTHY

DIER to Howard County General. It is still unclear who made the call that brought the

second ambulance service to the Howard County Assisted Living Facility. While at

Howard County General, the medical staff on or about January 4, 2006, performed an

UNCONSENTED SURGICAL DEBRIDEMENT on DOROTHY DIER'S right hip.

Apparently it was performed in her room with no anesthesia given and the next morning

when Jerry L. Dier arrived at the hospital and saw his mother, he noted a large bandage on her right hip. A nurse also observed it, and pulled the bandage away from the skin-now a large whole the size of a golf ball down to the bone-no one on the floor knew a surgical debridement had been performed. The attending physician on the floor stated that he could not answer any questions without a his lawyer being present and the surgeon who performed the debridement indicated to Jerry L. Dier that he might have to do further surgical debridement, making it necessary in the interest of the health and well being of DOROTHY DIER to have her transferred to the Washington Hospital Center. January 2006. Now, almost one year later, this golf size whole has healed, but other issues have arisen during the healing process, while DOROTHY DIER has been confined to bed and for the most part turned on her left hip.

59-. DOROTHY DIER is afflicted with some degree of contractures which have been worsened as result of said unconsented surgical debridement requiring an extended bed stay. However, while at Summit Park the staff, especially since her movement to the second floor in early November 2006, no matter what Jerry L. Dier has said; reminded the staff as instructed(by the therapist) that the physical therapist who worked with DOROTHY DIER in September and October 2006, at Summit Park on the first floor had found and ordered consistent with the finding, that both her legs could be readily moved 90 degrees plus, approximating the position when sitting in a chair or a car, but to no avail. The nursing staff insisted, on locking her left leg under her body with her right leg and foot immediately adjacent thereto, such that both her right and left legs and feet were parallel to the pillow above her head. Prior to the movement to the second floor, Dr. Bernhard, the facility wound doctor had commented during his weekly visit, in the end of

40

October 2006, after examining DOROTHY DIER, that she was wound-free and he would

no longer have to see Mrs. Dier every week but would still come in to look at her from

time to time. All this changed almost immediately upon her movement to the second

floor. No longer were DOROTHY DIER'S legs and feet kept separate from her body and

separated by a pillow and placed in a raised position from the bed, they were locked as

set forth above despite the protestations and statements of prior care and treatment on the

first floor from her son Jerry L. Dier. At different times this information was made

known to the charge nurse, the unit manager, the court appointed guardian of person,

Ophelia Ross and the wound doctor. On January 2, 2007, during his weekly visit the

wound doctor could clearly see that DOROTHY DIER'S left leg and foot had been

locked under her body, her leg was bluish in color and wrinkled and appeared to be

damp, and the bandaging on her left foot was wet, stained with the color of dry blood and

her left foot had wounds all about, and nothing was said by either Dr. Bernhard, the floor

nurse, or others who were present and had been present when Jerry L. Dier had

constantly reminded them that DOROTHY DIER'S legs and feet need not be locked

under her body, a finding made by the physical therapist only a short time before when

DOROTHY DIER was a patient on the first floor. Mr.Moore, the physical therapist and

Christine Schakenberg the occupational therapist, had both told Mr. Dier that it was also

his duty to instruct the staff caring for his mother on the way they had showed him that

his mother's feet and legs should be correctly positioned(this information should have

been in DOROTHY DIER'S medical chart). Mr. Moore stated that he had ordered

that DOROTHY DIER'S legs and feet were to be kept separate from her body with a

pillow in between. In December 11, 2006, Dr. Bernhard's response after having been

41

informed multiple times by Jerry L. Dier that his mother's legs and feet need not be

locked under her body stated that he would speak to the physical therapist about the

positioning of DOROTHY DIER'S legs and feet. However, when Jerry L. Dier checked

with Mr. Moore telling him what was taking place, Mr. Moore told him that he had not

been contacted by Dr. Bernhard. Mr. Moore soon disappeared from the scene and

apparently is no longer employed by Summit Park. The above described placement which

along with offering no relief from the contracture issue, also by way of body heat,

pressure and excrement causes severe damage and pain and suffering to DOROTHY

DIER'S legs and feet.

On Sunday, December 31, 2006, Mr. Richards, the charge nurse,

when told by Jerry L. Dier, the son of DOROTHY DIER that his mother seemed to be in

pain and discomfort from the positioning of her legs and feet, it could be seen in her

facial expressions and body movements Mr. Richards stated in response that she could

cry and scream all she wanted, this was the best position for her, and her crying and

screaming was only to get Mr. Dier's attention. Nothing was done to assist DOROTHY

DIER as she remained in pain and discomfort for much of the afternoon, to the suffering

of DOROTHY DIER and the horror of Jerry L. Dier.

As recently as Monday, January 15, 2007, when Dr. Bernhard came for his weekly

visit, it was clearly visible that DOROTHY DIER'S left leg and foot were locked under

her body and her right foot positioned adjacent thereto, and when the her legs were

moved so as to examine the wounds, it was apparent that the padding underneath her

body housing her left leg and left foot was soiled and wet and the bandaging was wet and

discolored from blood stains. Moreover, DOROTHY DIER'S left foot and toes were

terribly swollen and Dr. Bernhard attributed this condition to the wetness of her bandaging which was clearly the result of the pressure, heat, body sweat and excrement from her left leg and foot being placed under her body, a situation that the nursing staff had created to the detriment of DOROTHY DIER'S health, safety and well-being..

61- DOROTHY DIER has been taken to St. Agnes Hospital on two occasions based on a belief by Summit Park staff that she might be bleeding from the stomach apparently grounded on her vomiting, Jerry L. Dier had informed the staff at Summit Park time and time again that there equipment, she is fed by a G-tube did not properly work-he had personally calculated from what was to be dispensed and what had been dispensed over different time periods.. St. Agnes, on both occasions found nothing wrong with DOROTHY DIER and whatever symptoms she displayed at Summit Park disappeared immediately on her entrance to St. Agnes only minutes after leaving Summit Park.

63- On another occasion DOROTHY DIER was transported to St. Agnes based on an under arm temperature reading of over 101 degrees. Again immediately upon leaving Summit Park and arriving at St. Agnes, approximately a 10-15 minute trip, her temperature read normal.

## COUNT VI

### Violation of 42 U.S.C. 1983
### Deprivation of rights secured
### by United States Constitution

64- PLAINTIFFS incorporate by reference paragraphs 1- 63, as if fully restated here and not limited to the following further state:

65- The overriding federal questions presented in the context of this action have a direct impact on issues where DOROTHY DIER has been placed in the custody and control of

43

both the trial court, State of Maryland, Howard County, Circuit Court, Judge Dennis Sweeney, and his delegated agent, the court appointed guardian of the person of DOROTHY DIER, in violation of her rights of life, liberty and property guaranteed and to be protected under the United States Constitution placing her at substantial risk under the color of state law, whose integrity is open to serious question due to the conduct of the trial court and its agents.

### CONCLUSION

This Court must grant DOROTHY DIER'S request that a Writ of Habeas Corpus be issued so as to reach the merits of her claim that the Maryland State Courts have violated her federal rights guaranteed to be protected by the United States Constitution as set forth throughout this Petition depriving DOROTHY DIER of life, liberty and property under the color of state law, 42 U.S.C. 1983. DOROTHY DIER was placed at Summit Park under the supervisory authority of State of Maryland, Howard County, Circuit Court Judge, Dennis M. Sweeney and his delegated agent, the State of Maryland, Howard County, Office of Aging, and has been and is still in the custody and control of said Court and its delegated agent, of said guardian of person, the Office of Aging, after a trial by the Court, when DOROTHY DIER was effectively rendered defenseless, depriving her of her right to effective assistance of counsel, a fair and impartial court, a jury trial, and right to be present, amongst other matters, all to the detriment of DOROTHY DIER, as a human being and as a citizen of the United States under the United States Constitution, wherein, under the color of state law, the court had become a tool for wrongdoing. The most serious nature and fashion of the federal and statutory questions presented are such

44

that integrity of the judicial process is at issue, such as to place in jeopardy whether or not

it can be entrusted with family matters, which go to the heart of the functioning of the

society as a whole..

## REQUEST FOR EVIDENTIARY HEARING

PLAINTIFFS  submit the state trial court's assumption of inconsistent functions, the

judge and advocate for the appointment of a guardian of the person for DOROTHY DIER

constituted a fatal "structural" defect in those proceedings that renders his findings

constitutionally suspect and its decrees void.  PLAINTIFF is therefore entitled to an

evidentiary hearing on her constitutional claims that the process employed by the

Maryland state court violated her rights to due process, effective representation by

counsel, right to be present and confront witnesses, right to a jury trial and equal

protection of the laws.  In **Keeney v. Tamaco-Reyes**, 504 U.S. 1, 11 (1972), the Supreme

Court held that a "habeas petitioner's failure to develop a claim in state court proceedings

will be excused and a hearing mandated if he can show that a fundamental miscarriage of

justice would result from failure to hold a federal evidentiary hearing.  Furthermore, it is

respectfully requested that Judge Dennis M. Sweeney, State of Maryland, Howard

County Circuit Court and Anthony Doyle, 1002 Frederick Rd., Catonsville, MD 21228

and anyone else this Court deems necessary to present themselves at such hearing along

with any and all recordings of communication amongst themselves or their own personal

records, including but not limited to notes, collection of data and materials and

recordings, e-mail, computer entries and searches, and otherwise pertaining in any

fashion and/or manner to either the guardian of the person matter or the guardian of the

property matter concerning DOROTHY DIER and/or Jerry L. Dier in Howard County,
Maryland, so as to present themselves for examination to them the opportunity to offer
any explanation if possible in order to facilitate the search for the truth, while at the same
time protecting the constitutionally guaranteed rights of DOROTHY DIER which without
denial have been knowingly, intentionally, and deliberately violated depriving
DOROTHY DIER, an eighty nine year old naturally born citizen of the United States,
mother of two children and grandmother of three and wife of the late Richard R. Dier of
her constitutional rights and her natural rights as a human being.

PLAINTIFF, Jerry L. Dier presents this petition for habeas corpus relief in behalf of
his mother to this Honorable Court as the proud and determined son and next friend of
DOROTHY DIER, while recognizing the unusual nature of this request. However, justice
is not to be limited by form, it is to be open to all, and Mr. Dier having spent the better
part of his professional life representing those who might otherwise have no voice, can
and must do no other than be there for his mother in her moment of need, even as here
when it requires that it be brought to this Court's attention that the conduct of the State
Courts in Maryland are undeniably as it appears to be, casting a long shadow of darkness
on the integrity of the legal system as regards those who enter its tent in search of justice.
This Court has an opportunity while there is still time to do justice; otherwise, avoidance
will both act so as to doom DOROTHY DIER as well as send a message that the Rule of
Law does not apply to those who are trusted to enforce it. The merits of the factual
dispute were not resolved in the state hearing, the fact finding procedure employed by the
state court was not adequate to afford a full and fair hearing, the material facts were not
adequately developed at the state court hearing, the habeas applicant was not afforded a

full and fair hearing.

The Maryland State Courts did not even consider, much less address the merits of the substantive federal questions noted in detail throughout this petition pertaining to the guardian of the person action or during the request for recusal which added much needed clarity to the actions of the trial court and court appointed counsel Anthony Doyle.

## PRAYER FOR RELIEF

Wherefore, PETITIONER, **DOROTHY DIER**, by and through her son and next friend Jerry L. Dier, requests relief as follows:

1. Schedule an immediate hearing on the question of issuing a writ of habeas corpus requiring Respondents, Judge Dennis M. Sweeney, and Phyllis Madachy, Director, Office of Aging to Show Cause why their actions are not in violation of Petitioner's rights under the Sixth, Eighth and Fourteenth Amendment to the Constitution of the United States, and Title 42 U.S.C. Sect. 1983.

2. Enter an order issuing said writ of habeas corpus.

3. Release DOROTHY DIER from state custody by setting aside the March 7, 2006, State of Maryland, Howard County Circuit Court order appointing a guardian of person for DOROTHY DIER..

4. Grant such other and further relief as this Court shall seem just and equitable.

5. That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order.

Dated:  January 16, 2007

Respectfully submitted,

Jerry L. Dier, Pro se
11448 Rowley Rd.
Clarksville, MD 21029
Son and next best friend
(202)276-8716

Verification

I declare under penalty of perjury under the laws of the United States of
American that the foregoing in true and correct. Executed on January 16,
2007.

Jerry L. Dier

48

**APPENDIX**

# APPENDIX

Appendix 1 -    March 7, 2006, Court Order, guardian of person action
                APPOINTING GUARDIAN OF PERSON

Appendix 2-     Answer to Petition filed by court appointed counsel on
                October 14, 2005, in guardian of person action

Appendix 3-     Memorandum and Order, Judge Dennis M. Sweeney,
                In guardian of property action dated September 27, 2006

Appendix 4-     October 4, 2006, Court Order, guardian of property action
                APPOINTING GUARDIAN OF PROPERTY

07 0106
FILED
JAN 1 7 2007

IN THE MATTER OF DOROTHY DIER    :    IN THE
FOR THE APPOINTMENT OF    :    CIRCUIT COURT
A GUARDIAN OF THE PERSON    :    FOR HOWARD COUNTY

                                :    CASE NO. 13-C-0563324



**MAR 7 2006**

CLE...
...... ...... COURT
HOWARD COUNTY

                                    **ORDER**
**GUARDIAN OF THE PERSON**

     The Court has considered the Petition and the Amended Petition for the Appointment of a Guardian of the Person of Dorothy Dier, a person alleged to be under a disability, and the Certificates of Competency attached to the Petition and the Amended Petition. The Court has also considered the Answer filed on behalf of Dorothy Dier by her attorney, Anthony Doyle, Esq. This matter came before the court for a hearing on March 7, 2006, and the court considered the arguments of all counsel and all parties. It is this ____7th____ day of _March_, 2006, that the Court makes the following findings of fact, pursuant to Md. Code Ann., Est. & Trusts § 13-705(b):

     WHEREAS, the Court finds that the disabled person cannot be present because of a physical or mental incapacity and is unable to consent to the appointment of a Guardian of the Person; and

     WHEREAS, the disabled person was represented by counsel and has waived her right to a jury trial; and

     WHEREAS, this Court has found by clear and convincing evidence that Dorothy Dier lacks sufficient understanding or capacity to make or communicate responsible decisions concerning her person because of a disability as defined in the Md. Code Ann., Est. & Trusts §13-705, the nature of the disability being Dementia; and

WHEREAS, the Court finds that it is in Dorothy Dier's best interests to have a Guardian of the Person appointed; and

WHEREAS, the disabled person needs a Guardian of the Person and there is no less restrictive form of intervention available which is consistent with the person's welfare and safety; it is therefore

ORDERED, this ___7th___ day of ___March___, 2006, by the Circuit Court for Howard County, that, Phyllis Madachy, Director of the Howard County Office on Aging, or her successor or designee, 6751 Columbia Gateway Drive, Columbia, MD 21046 be and is hereby appointed Guardian of the Person of Dorothy Dier with all of the rights enumerated in Md. Code Ann., Est. & Trust §13-708; and it is further

ORDERED, that the Guardian of the Person may consent to medical, dental, or other professional care, medication, including psychotropic medication, counseling, treatment, services, or admission to a nursing home for the disabled person; and it is further

ORDERED, that this Court must authorize the Guardian to consent to any medical procedure that involves a substantial risk to the life of the disabled person; and the withholding or withdrawal of any medical procedure that involves a substantial risk to the life of the disabled person; and it is further

ORDERED, that pursuant to Maryland Rule 10-206, the Guardian of the Person shall file an Annual Report with the Clerk of the Court, no later than sixty (60) days following March 7th of each year, indicating the present place of residence of both the

guardian and the disabled, the health and mental status of the disabled person, the Guardian's plan of care for the disabled person, whether there is a need for the continuation of the guardianship, any reason to change the Guardian's powers, or if the guardianship should be terminated; and it is further

ORDERED, that the contract attorney for the Department of Human Resources is hereby authorized to represent Dorothy Dier before the Adult Public Guardianship Review Board; and it is further

ORDERED, that this matter shall be scheduled for a review hearing at the discretion of this Court, or upon petition of any party.

Dennis M. Sweeney
Judge, Circuit Court for Howard County

| | | |
|---|---|---|
| IN THE MATTER OF | * | IN THE |
| DOROTHY DIER | * | CIRCUIT COURT |
| FOR THE APPOINTMENT OF | * | FOR |
| A GUARDIAN OF THE PERSON | * | HOWARD COUNTY, MARYLAND |
| | * | CASE NO.: 13-C-05-063324 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### ANSWER TO THE PETITION FOR GUARDIANSHIP OF THE PERSON

Now comes Dorothy Dier, by and through her attorney, Anthony E. Doyle, Jr., and in answer to the Petition for Guardianship of the Person  respectfully states as follows:

1. That in answer to the allegations in paragraph 1, she admits her age and address and that she was, at the time of filing of the petition, a patient at Washington Adventist Hospital but avers that she is now in an assisted living facility in Burtonsville Md.

2. That she admits the allegations contained in paragraphs 2-4 of the Petition.

3. That she is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 5 and 6.

4. That she admits the allegations contained in paragraphs 7 through 12.

5. That in further answer thereto, the Respondent waives her right to have this matter tried before a jury, as well as her right to appear before this Honorable Court.

**WHEREFORE,** having fully answered the Petition, the Respondent

1

prays this Honorable Court to:

    A.  Appoint a guardian of her person;

    B.  Accept her waiver of her right to a jury trial and her right to appear at a hearing;

    C.  Grant her such other and further relief as the nature of her cause may require.

Anthony E. Doyle, Jr.
Attorney for Respondent
1002 Frederick Road
P.O. Box 21169
Catonsville, Maryland 21228
410-719-8860

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that the foregoing Answer to the Petition was sent hand delivered to Beverly Heydon, Assistant County Solicitor this _14_ day of October, 2005 at the Circuit Court for Howard County.

Anthony E. Doyle, Jr.

2

IN THE MATTER OF                    *        IN THE

DOROTHY DIER,                       *        CIRCUIT COURT

FOR THE GUARDIANSHIP                *        FOR

OF THE PROPERTY                     *        HOWARD COUNTY

                                    *        Case No. 13-C-06-65465

    *       *       *       *       *        *       *       *       *

## MEMORANDUM AND ORDER

Before the Court are the Motion for Reconsideration and the Supplement to the Motion for Reconsideration filed by Interested Person, Jerry L. Dier, asking the Court to reconsider its decision appointing a guardian of the property of Dorothy Dier. Most of the points were dealt with in the hearing before this Court, but some comments are perhaps necessary to hopefully conclude the matter.

**Issue of Recusal.**

The Court sees no basis for recusal. The Court did not select the nursing home for Ms. Dier, and had only the most general knowledge of the facility, as placed on the record. Testimony was taken about the facility and its suitability for Ms. Dier. The Court's decision was not *where* to place Ms. Dier, but whether she needed a guardian and if so, who the guardian should be. It was the guardian's decision about what facility would be suitable.

Mr. Dier harps on a single statement made by the Court to Mr. Doyle. The comment was intended merely as a statement of humor in an otherwise long and drawn-out proceeding that was trying and

wearing on all concerned.  It in no way reflected any observation about Mr. Doyle's lack of attentiveness.  Mr. Doyle's representation of Ms. Dier in these proceedings has been well within the Court's expectations, and the Court commends Mr. Doyle for his patience and forbearance in dealing with the totally unwarranted accusations and unrealistic demands of Mr. Dier.

**Adequacy of the Testimony.**

The testimony in this case and the companion guardianship of the person case from all the health providers and the lay witnesses other than Mr. Dier has been that Ms. Dier has for the past year been bed-bound and virtually unable to communicate with anyone in any meaningful way.  She may on occasions make sounds, say phrases, or respond to stimuli in what was described as a reflexive way by the medical providers.  She is unable to communicate in voice or writing.  After days of testimony before this Court, the evidence of her total incapacitation is simply overwhelming and contradicted only by the belief expressed by Mr. Dier that the only thing she suffers from is some depression which she will "snap out of" someday and then will be able to leave the nursing home to reside with Mr. Dier.  The Court has tried to give Mr. Dier the benefit of the doubt about his bizarre belief in the face of the overwhelming evidence, but the time has certainly come, in the interest of providing for the best care for Ms. Dier, to no longer treat Mr.

Dier's position as if it has any merit. Simply put, it does not.

To this point, the Court has attempted to give Mr. Dier the benefit of the doubt, believing that he was genuinely only interested in his mother's welfare and care, and was merely suffering from a near delusional inability to perceive his mother's true condition as every other person, lay or professional, represents to this Court, i.e., that Ms. Dier is in an end-stage condition suffering from dementia, is unable to express herself or communicate, is confined totally to bed or similar accommodation needing care for every function of daily living.

**Ms. Dier's Physical Presence in Court.**

Mr. Dier continues to press the issue that the Court should have had Ms. Dier brought to the well of the court and proceeded only with her physically present in the courtroom during the hours of Mr. Dier's motions, cross-examination and arguments. In light of the record in this case, it is hard to treat his continual pressing of such positions as merely misguided zeal on behalf of his mother. It appears more akin to obstructionist bad faith behavior directed at those who had to intervene because he and his sister either chose not to provide for adequate care of their mother or were mentally or emotionally incapable of making such decisions.

**Further Analysis.**

The Court is satisfied that the Department of Social Services did not want to intervene into this situation. Neither did this Court. Mr. Doyle did not seek the appointment, but took it on as a public service at the request of the Court, as he has done for over 15 years, oftentimes at great personal sacrifice and with only infrequently being paid anything near the going rate for his services. Numerous doctors and health care providers have had to come to court from as far away as Washington D.C. and take time away from patient care to explain over and over again what is obvious to everyone who is either realistic or acting in good faith. The Summit Nursing Home has had Ms. Dier as a patient for most of 2006, and has been paid nothing, as the Court understands it. Repeated requests were made to Mr. Dier and his sister to either facilitate payment or at least provide the information needed to apply for Medical Assistance on Ms. Dier's behalf. They have not responded.

This proceeding is not a game. The Court has the responsibility, along with the Department of Social Services, to protect those disabled persons whose families are unable or unwilling to provide for them. Mr. Dier's repeated obstructions, refusal to acknowledge the obvious, and his personal attacks on persons and providers trying merely to help his totally incapacitated mother are without any justification at this point.

-4-

Finally, the Court notes in the supplemental filing that Mr. Dier is now gearing up to attack Mr. Meachum, the guardian appointed by the Court to collect and manage the assets of Ms. Dier. Mr. Meachum has impeccable credentials and is one of the most respected members of the Bar of this county. Mr. Meachum has frequently undertaken court appointments by many members of this bench, both present and past, and has always performed in an exemplary fashion and with great integrity. Mr. Dier has stated on this record that he does **not** want to be appointed guardian of the property, and his sister has surrendered her power of attorney. Despite this, he fights those who are trying to provide for his mother. It is simply not acceptable for Mr. Dier to continue to undermine the efforts of those now responsible for his mother's care. The Court will not tolerate Mr. Dier's continual obstruction of the guardians in their efforts to provide care for Ms. Dier.

For these reasons, it is, this 27th day of September, 2006,

ORDERED, that the Motion For Reconsideration of Court Finding Granting Guardianship of the Property and the Supplement to that Motion are denied.

Dennis M. Sweeney
JUDGE

Copies Mailed _9-28-06_ to:

Gina D. Shaffer, Esq.
Shaffer Law Office LLC
319 Fulford Avenue
Bel Air, MD 21014-3834

Thomas M. Meachum, Esq.
Reese & Carney
10715 Charter Drive
Suite 200
Columbia, MD. 21044

Beverly I. Heydon, Esq.
Howard County Office of Law
3430 Courthouse Drive
Ellicott City, MD  21043

Anthony E. Doyle, Jr., Esq.
P.O. Box 21169
Catonsville, MD 21228

Jerry L. Dier
11448 Rowley Road
Clarksville, MD 21029

| IN THE MATTER OF | : | IN THE |
| DOROTHY DIER | : | CIRCUIT COURT |
| FOR THE APPOINTMENT | : | FOR |
| OF A GUARDIAN OF THE | : | HOWARD COUNTY |
| PROPERTY | : | CASE NO. 13C06 65465 |

**ENTERED**
OCT 4 2006
CLERK, CIRCUIT COURT
HOWARD COUNTY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ORDER APPOINTING GUARDIAN OF
### THE PROPERTY OF DOROTHY DIER

This case having been heard on the 22nd day of _September_, 2006 before the

Circuit Court for Howard County, and this Court having considered the verified Complaint,

testimony, and exhibits, and having found by clear and convincing evidence that DOROTHY

DIER lacks sufficient understanding or capacity to make or communicate responsible decisions

concerning his property because of a disability as defined in Md. Code Ann., Estates & Trusts

Article §§ 13-201 and 13-705, the nature of the disability being **end stage dementia**. This Court

further finds that the disabled person is unable to consent to the appointment of a guardian, that

the disabled person needs a guardian and that no less restrictive form of intervention is available

which is consistent with the person's welfare and safety.

### [Court shall select one of the following two paragraphs.]

(   ) The Court finds that the disabled person was present and waived a jury trial.
### [OR]
(✓) The Court finds, after hearing, that the disabled person cannot be present
because of physical and mental incapacity ~~or that the disabled person~~
~~knowingly and voluntarily waived the right to be present at the hearing~~.
Counsel for the disabled person waived a jury trial.

Therefore, it is, by the Circuit Court for Howard County

ORDERED that

1




Name _Thomas M. Meachum, Esq., Reese and Carney_

Address _10715 Charter Drive, Suite 200, Columbia, MD 21044_

Telephone # _410-740-4600_

Be and hereby is, appointed as Guardian of the Property with all the rights, duties and powers set

forth in Md. Code Ann. Estates & Trusts Art. §§ 13-206, 13-708, 15-102 and Md. Rules 10-206

and 10-305; and it is further

ORDERED, that the Guardian of the Property shall:

**[Court shall select one.]**

(✓) Give a Corporate Bond to the State of Maryland in the sum of _$100,000.00_ with
surety or sureties to be approved by the Clerk of the Court for the faithful discharge of
＊ Guardian's duties; and it is further

**[OR]**

( ) Is excused from giving bond; and it is further

ORDERED that pursuant to Maryland Rules 10-706 and 10-708, the Guardian of the

Property shall file with the Trust Clerk, an inventory of all assets of the disabled person of which

the Guardian has knowledge within sixty (60) days of today's date and thereafter shall file

annual accounting within sixty (60) days of the annual anniversary date as set forth above.

_____
JUDGE

＊ Guardian shall undertake his duties immediately but obtain
the bond within 30 days of the date of this order.

2

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS** DOROTHY DIER
JERRY L. DIER

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** ~~36666~~
(EXCEPT IN U.S. PLAINTIFF CASES)

Baltimore County

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
7 Jerry L. Dier, as son, next friend - Prose
11445 Raley Rd, Clarksville MD 21029
(202) 276-5416

**DEFENDANTS** Phyllis Madachy
Judge Dennis M. Sweeney
COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Howard
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

```
CASE NUMBER   1:07CV00106
JUDGE: Colleen Kollar-Kotelly
DECK TYPE: Habeas Corpus/2255
DATE STAMP: 01/17/2007
```

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP**
FOR PLAINTIFF AN

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/
Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency
Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

☐ **D. Temporary Restraining
Order/Preliminary
Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other) OR ☐ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of
Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt
Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if not
administrative agency review or
Privacy Act

— O —

| ☑ **G. Habeas Corpus/ 2255** | ☐ **H. Employment Discrimination** | ☐ **I. FOIA/PRIVACY ACT** | ☐ **J. Student Loan** |
|---|---|---|---|
| ☑ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |

| ☐ **K. Labor/ERISA (non-employment)** | ☐ **L. Other Civil Rights (non-employment)** | ☐ **M. Contract** | ☐ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Writ of Habeas Corpus   Title 28 U.S.C. 2254 / 42 U.S.C. 1983 Release of Porenly Dier
28 U.S.C. 1331   (IN STATE CUSTODY)  AS A RESULT OF GUARDIANSHIP Action

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** NF.   (See instruction)   ☐ YES ☐ NO   If yes, please complete related case form.

**DATE** 1/17/07   SIGNATURE OF ATTORNEY OF RECORD   Jerry L. Dier, as son and next friend Pro se

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.